IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CARDINAL DATABASE SERVICES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | 1:15-CV-494  RP |
| | § | |
| JOHN KLESKI, INDIVIDUALLY; | § | |
| CATALIS, INC.; PHYMEDICA, LLC; | § | |
| and MEDICAL MANAGEMENT | § | |
| SOLUTIONS, INC., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are Defendants' Motion to Transfer Venue, and Subject Thereto, Motion to Dismiss, filed July 16, 2015 (Clerk's Dkt. #14), and the responsive pleadings thereto.  After reviewing the parties' pleadings, relevant case law, and the entire case file, the Court issues the following order.

**I.  BACKGROUND**

Plaintiff Cardinal Database Services, LLC ("Cardinal") brings this action against defendants John Kleski ("Kleski"), Catalis, Inc. ("Catalis"), Phymedica, LLC ("Phymedica") and Medical Management Solutions, Inc ("MMS").  Cardinal is owned by Arthur Gurney ("Gurney"), a former employee of Catalis.  Plaintiff describes Catalis as a medical software services provider contracting with medical practices and physicians in the management of health care records.  (Plf. 1st Am. Compl. ¶ 10).

According to Plaintiff, Catalis terminated Gurney's employment in January 2008, but approached him in April 2008 to work for Catalis as an independent contractor.  In May 2009, Catalis and Gurney entered into a one year independent contractor agreement (the "2009 Agreement").  At the request of Catalis, due to Catalis' preference not to deal with individuals as

independent contractors, Gurney founded Cardinal.  Although they negotiated, Cardinal and Catalis did not enter into any agreement.  Nonetheless, upon the expiration of the 2009 Agreement in May 2010, Gurney continued to provide Catalis with his services as an independent contractor for eighteen months.  (*Id*. ¶¶ 11-13).

On September 15, 2011, Gurney and Catalis entered into a second one year independent contractor agreement (the "2011 Agreement"), which was negotiated by Kleski on behalf of Catalis. In October 2012, following expiration of the 2011 Agreement, Gurney started actively doing business under the umbrella of Plaintiff Cardinal.  On October 4, 2011, Gurney advised Catalis and Kleski that all work for Catalis beginning October 1, would be done through Cardinal.  According to Plaintiff, Kleski agreed, and Catalis' agreement was evidenced by its subsequent payments of Cardinal's invoices.  (*Id*. ¶¶ 14-15).

Plaintiff alleges Catalis fell behind in its payments to Cardinal, and by the end of 2013 owed $112,528.75 for services.  Plaintiff further alleges, on December 13, 2013, Phymedica's agent, Jose Eduardo Orellana ("Orellana") told Cardinal it would be paid by the end of the year by either Phymedica, Kleski, or Catalis, specifically that "Phymedica will most likely be in a great position to pay any remaining invoices and or owed finances before this month is over."  (*Id*. ¶ 18).  Further, on December 29, 2013 Kleski told Plaintiff it would be "made whole" by December 31, 2013 from proceeds of an investment Kleski had made in Iraqi dinars.  Plaintiff alleges these assurances were made to induce Plaintiff to continue to work for the Defendants in 2014, without a formal, written contract and, further, Plaintiff relied on these statements and continued to work for Defendants. However, Defendants failed to pay Plaintiff by December 31, 2013.  (*Id*. ¶¶ 17-18).

Plaintiff alleges that on February 28, 2014, all of Catalis's employees in Austin quit due to non-payment of their salaries, leaving Plaintiff as the sole entity handling Catalis' customer service. At that point, Plaintiff's accounts receivable with Catalis totaled $140,356.25.  According to Plaintiff, from March 2014 through March 2015, Kleski repeatedly assured Gurney that Cardinal would be

2

paid for its work for Catalis with the intent that Cardinal continue to provide services to Catalis.  (*Id*. ¶¶ 19-22, 24-29).

In addition, Kleski specifically requested Plaintiff provide "data dumps" of patient records to physicians ending their relationship with Catalis and told Plaintiff it would receive all revenue generated from that service.  According to Plaintiff, Catalis instead retained that revenue.  (*Id*. ¶ 23).  On February 24, 2015 Plaintiff was provided notice it would not be paid by Cardinal.  Plaintiff states it is owed $240,184.77 and has not yet been paid.  (*Id*. ¶ 30).

Plaintiff now asserts a claim of fraud, or alternatively, negligent misrepresentation against all defendants.  (*Id*. ¶¶ 35-40).  Plaintiff further asserts a claim for breach of contract, or alternatively, for quantum meruit against Catalis and Kleski.  (*Id*. ¶¶ 41-46).  Plaintiff additionally asserts Defendants are jointly liable under theories of respondeat superior, joint enterprise, and piercing the corporate veil.  (*Id*. ¶¶ 49-54).

Defendants have now filed a motion to transfer this case, arguing venue lies in the Richmond Division of the United States District Court for the Eastern District of Virginia, based on a forums selection clause in the 2011 Agreement.  Defendants alternatively move to dismiss Plaintiff's claims of fraud and negligent misrepresentation.  The parties have filed responsive pleadings and the matters are now ripe for determination.

## II.  MOTION TO TRANSFER VENUE

Defendants have moved to transfer this action pursuant to 28 U.S.C. § 1404(a) on the basis of a forum selection clause in the 2011 Agreement.  Defendants maintain the clause is a mandatory provision limiting jurisdiction and venue of this action to Virginia.

### A.  Applicable Law

The Supreme Court has made clear that the appropriate way to enforce a forum selection clause is through the doctrine of forum non conveniens.  *Atlantic Marine Const. Co. v. United*

*States Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013).  The statute on which Defendants rely is the codification of that doctrine for the federal court system.  *Id*.  It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

In cases where a forum selection clause is not present, district courts applying section 1404(a) weigh a variety of private- and public-interest factors and decide whether a transfer would serve "the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atlantic Marine*, at 581 (quoting § 1404(a)).  In cases where there is a valid forum selection clause, "[t]he calculus changes," because the clause "'represents the parties' agreement as to the most proper forum.'"  *Id*. (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).  In that circumstance, district courts must "adjust their usual § 1404(a) analysis" and instead "transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer."  *Id*. at 581, 575.

## B.  Analysis

Defendants argue jurisdiction and venue in this case are governed by a provision in the 2011 Agreement.  Specifically, they cite to the provision stating: "the courts of Chesterfield County in the Commonwealth of Virginia shall have jurisdiction over the parties with respect to any dispute or controversy between them arising under or in connection with this Agreement."  (Plf. Resp. Ex. A ¶ 7(e)).  Defendants concede the 2011 Agreement expired in October 2012.  However, they contend because the parties continued to operate under the same terms, its language still controls any dispute arising from the provision of services by Cardinal to Catalis and mandates jurisdiction and venue over this action lie in Virginia.

Plaintiff disagrees for several reasons.  First, Plaintiff notes Gurney, not Cardinal, was the

4

signatory and party to the 2011 Agreement.  Second, Plaintiff points out the 2011 Agreement expired by its own terms prior to the conduct at issue in this lawsuit, no recovery is sought for an alleged violation of the 2011 Agreement, and thus the terms of the 2011 Agreement do not govern this dispute.

The Court agrees.  Under Texas law, when parties initially operate under an express contract, but continue to operate in essentially the same manner after the contract has expired, the rights of the parties are determined under implied contract principles.  *Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex. App.–Amarillo 1984, no writ).  *See Houston Med. Testing Servs., Inc. v. Mintzer*, 417 S.W.3d 691, 698 (Tex. App.–Houston [14th Dist.] 2013, no pet.) (implied agreement may also arise from acts and conduct of parties).  The resulting contractual relationship stems from a new, implied contract, not an extension of the old, expired contract.  *See Emmer*, 668 S.W.2d at 490-91 (after express contract expired by its terms, any rights and obligations of parties "arise from the new implied contract, not the old expired contract").  *See also Sphere Drake Ins. Co. v. La Gloria Oil & Gas Co.*, 121 F.3d 705 (5th Cir. 1997) (while continued performance may give rise to implied contract, "it cannot perpetuate a written contract"); *Harrison v. Williams Dental Grp., P.C.,* 140 S.W.3d 912, 917 (Tex. App.–Dallas 2004, no pet.) (declining to find covenant not to compete included in expired written agreement continued to bind parties in subsequent implied employment agreement); *Double Diamond Inc. v. Hilco Elec. Coop., Inc.*, 127 S.W.3d 260, 265-67 (Tex. App.–Waco 2003, pet. denied) (where contract expired, but parties continued to deal with each other, Texas law did not prohibit parties from entering into implied agreement).

It is clear in this case that Cardinal did not explicitly enter into the 2011 Agreement with Catalis.  Rather, Cardinal has alleged it agreed to, and did, provide services to Catalis under the implicit agreement that Cardinal would receive payment for those services.  Defendants have pointed to nothing which indicates Cardinal agreed to litigate any disputes concerning that payment in the courts of Virginia.

Plaintiff additionally argues, even if the clause on which Defendants rely is in force, the language of the clause is permissive, rather than mandatory.  That is, Plaintiff contends the phrase directing that Virginia courts "shall have jurisdiction over the parties" permits, but does not require, that a dispute under the 2011 Agreement be litigated in Virginia.

A forum selection clause can be mandatory and exclusive, or permissive in nature.  *Waste Mgmt. of La., L.L.C. v. Jefferson Parish ex rel. Jefferson Parish Council*, 594 F. App'x 820, 821 (5th Cir. 2014); *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994).  A mandatory forum selection clause requires that all litigation be conducted in a specified forum.  *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir. 2009).   A mandatory forum selection clause is enforceable if its language is clear.  *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) ("For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive").

As the Fifth Circuit has recognized, the fact that a forum selection clause uses the word "shall" does not make the clause mandatory.  *See Caldas*, 17 F.3d at 127 ("Even though the clause now before us uses 'shall,' which is generally mandatory, this clause need not necessarily be classified as mandatory").  Thus, a forum-selection clause providing that a certain country's laws and courts "shall be applicable" was deemed permissive.  *Id.* (citing with approval *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987) (finding forum selection clause providing that Orange County courts "shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of [the] contract" was permissive)).

Of particular significance to this case is the distinction courts have drawn between the terms venue and jurisdiction, finding clauses addressing the propriety of jurisdiction are generally permissive rather than mandatory.  *See K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499 (10th Cir. 2002) ("[W]here venue is specified with mandatory

6

or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive"). *See also Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 761 (7th Cir. 2006) (forum selection clause providing "[j]urisdiction and venue over any disputes arising out of this agreement shall be proper only in the federal or state courts in Dallas County, Texas" was mandatory); *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956 (5th Cir. 1974) (clause stating "the parties submit to the jurisdiction of the courts of New York" was permissive and did not deprive Louisiana court of jurisdiction).   Our sister court has explained that the phrase providing that a particular court "shall have jurisdiction" over a particular controversy is considered permissive "because it does not foreclose the possibility that other courts may also have jurisdiction." *Breakbulk Transp., Inc. v. M/V Renata,* 2008 WL 1883790, *2 (S.D. Tex. Apr. 25, 2008).   Because the clause at issue simply provides for jurisdiction in the courts of Virginia, but does not limit jurisdiction there, the Court finds it permissive.   *See, e.g., Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 2007 WL 3256210, at *3 (W.D. Tex. Nov, 2, 2007) (concluding forum selection clause in which parties agreed to "irrevocably submit to the jurisdiction of the United States District Court for the Southern District of New York and any court in the State of New York located in the City and County of New York" was permissive, not mandatory); *Nayani v. Horseshoe Entm't*, 2007 WL 1062561, at *7 (N.D. Tex. Apr. 10, 2007) (provision in which party agreed "[t]o submit to the jurisdiction of any state or federal court in Louisiana" did no more than establish that jurisdiction is proper in Louisiana state and federal courts, but did not make that forum exclusive); *Von Graffenreid v. Craig*, 246 F. Supp. 2d 53, 560–61 (N.D. Tex. 2003) (finding clause stating "that the district court of Dallas County, Texas, or ... the United States District Court for the Northern District of Texas, Dallas Division, shall have jurisdiction to hear and determine any claims or disputes ... pertaining to this Agreement" was permissive since it only specified that certain courts will always have jurisdiction, but evidenced no intent to exclude other jurisdictions).   Accordingly,

7

as Defendants only basis for seeking transfer of this action is the terms of the 2011 Agreement, they have not shown transfer of this action is warranted.

### III.  MOTION TO DISMISS

Defendants also move, should the Court decline to transfer this action to Virginia, to dismiss Plaintiff's claims of fraud and negligent misrepresentation for failure to state a claim for relief. Specifically, Defendants contend Plaintiff's allegations against MMS and Phymedica fall well short of the plausibility standard required under *Twombly* and *Iqbal* and thus Plaintiff's fraud and negligent misrepresentation claims against those defendants should be dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (well-pleaded factual allegations must plausibly give rise to an entitlement to relief);  *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007) (pleading standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement").

Defendants further contend Plaintiff's fraud claims against Kleski and Catalis fail because Plaintiff has not alleged that any statements attributable to those defendants were made with the intent to not pay Plaintiff, and the statements thus at most support a claim of breach of contract. *See Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) (claim of fraud requires showing that, when representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (same).  They contend Plaintiff's negligent misrepresentation suffers from the same flaw.  *See First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (negligent misrepresentation claim requires showing defendant supplied "false information" for guidance of others in their business); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (same).  Defendants finally maintain the representations identified by Plaintiff involve future, rather than existing, conduct as required to state a negligent

misrepresentation claim.  *See Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (misrepresentation regarding future conduct cannot support claim of negligent misrepresentation).

In response, Plaintiff contends it has sufficiently alleged both its claims for fraud and negligent misrepresentation.  However, Plaintiff has also requested leave to file an amended complaint to rectify any deficiencies in its pleadings.

A district court has discretion to either grant or deny a motion for leave to amend.  *See Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir. 1996).  Leave to amend, however, should be "freely given" as required by the Federal Rules of Civil Procedure.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  *See Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993) (although not automatic, leave to file an amended complaint should be freely given when justice requires).  Defendants raise no objection to this request in their reply.  The request to amend is thus properly granted.  *See* FED. R. CIV. P. 15(a) (party may amend pleading once as matter of course at any time before responsive pleading is served, court should "freely give leave" thereafter)

Accordingly, Defendants' motion seeking dismissal of Plaintiff's fraud and negligent misrepresentation claims is denied without prejudice to reassertion after Plaintiff has filed an amended complaint.

## IV.  CONCLUSION

The Court hereby **DENIES** Defendants' Motion to Transfer Venue, and Subject Thereto, Motion to Dismiss (Clerk's Dkt. #14).  Plaintiff shall file an amended complaint within fourteen days

of the date of this order.

**SIGNED** on August 27, 2015.


ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE